Scott Edelsberg (SBN 330990)
**EDELSBERG LAW, P.A.**
1925 Century Park E, #1700
Los Angeles, California 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ARIA PERIERA, on behalf of herself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>INTERNATIONAL SURF VENTURES, LLC<br><br>　　　　　　Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Aria Periera ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against Defendant International Surf Ventures, LLC ("Defendant" or "ISV"). Plaintiff makes the following allegations based upon, *inter alia*, the investigation made by her counsel, and based upon information and belief, except as to those allegations specifically pertaining to Plaintiff which are based on her personal knowledge and alleges the following:

## **PRELIMINARY STATEMENT**

1.　　This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant International Surf Ventures, LLC, arising from its use of surreptitiously tacking on "Route Package Protection" fees on all orders placed on its website without consumers' consent.

1

2.    When consumers make a purchase through ISV's website, they browse products, select items from the online store, add them to their cart, enter their billing and shipping information. Up until this point, this is all standard for an online purchasing experience. However, ISV vastly diverts from the standard experience on the final payment screen by secretly tacking on a so-called "Route Package Protection" Fee, which is a percentage of the transaction that is automatically added to all orders.

3.    Never do consumers affirmatively choose to add the "Route Package Protection" to their shopping cart. Instead, ISV secretly adds this fee without consumers' consent right before the purchase is complete.

4.    Automatically sneaking in this fee is what the FTC has deemed as a "Digital Dark Pattern" designed to trick or manipulate consumers into making choices that they might not otherwise have made.

5.    As discussed in detail herein, sneaking in this Fee is deceptive and unfair, since, a) ISV automatically adds this fee to consumers' carts without their permission and does not disclose this added Fee until the very last step in the multi-step purchasing process; and b) the Fee itself is deceptively named and described.

6.    ISV hides, disguises, and fails to divulge that a "Route Package Protection" fee will be automatically added to all orders to deceive consumers into purchasing it.

7.    Automatically adding additional products or services to online shopping carts without explicit consumer consent is a deceptive practice.

8.    ISV omits and conceals material facts about purchasing items on ISV's website, never once informing consumers in any disclosure, at any time, that the so-called "Route Package Protection" Fee will be automatically and surreptitiously added to all orders.

9.    Despite its own responsibilities to ensure the care and delivery of the products it sells and ships to consumers, ISV utilizes deceptive tactics to foot the bill on the consumers, tricking them into paying for services already provided and forcing

them into subsidizing ISV's customer support costs, all to the benefit of ISV's bottome line.

10.     Thousands of ISV customers like Plaintiff have been assessed a hidden fee for which they did not bargain.

11.     Consumers like Plaintiff reasonably understand ISV's advertised price to disclose the total cost they will pay for their products, as well as the costs of delivery.

12.     By unfairly obscuring its addition of a "Route Package Protection" Fee to consumers shopping carts, ISV deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true prices and fees.

13.     Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay ISV's surreptitiously added-on fee.

## PARTIES

14.     Plaintiff Aria Periera is a resident and a citizen of Los Angeles, California.

15.     Defendant International Surf Ventures, LLC is a sporting goods manufacturer incorporated in Delaware and headquartered in Southlake, Texas.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a different State than Defendant, including Plaintiff. The exact number of members of the proposed Class is unknown to Plaintiff, but upon

CLASS ACTION COMPLAINT

information and belief, is more than 100. 28 U.S.C. § 1332(d)(5)(B).

17.    This Court has personal jurisdiction over the Defendant because Defendant is registered with the California Secretary of State to do business in California.  Defendant maintains minimum contacts with California such that an exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice and/or otherwise intentionally avails itself of the California market, including in this District, which has caused both obligations and liability of Defendant to arise here.

18.    Plaintiff and the proposed Class have suffered injury as a result of Defendant's acts in this District.

19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant does business in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A.    ISV's Website Fails to Bind Users to Any Terms of Service

20.    When a consumer selects an item for purchase on the ISV website, she then enters into a multi-step purchasing process in which she is first shown a screen displaying her shopping cart and a subtotal, as seen on the next page.



21.     Next, as depicted on the following page, a consumer is shown a screen that requires the entry of personal information and payment information.



22. During the multi-step process, ISV users are never required to view ISV's terms of service and are never required to affirmatively consent to ISV's terms of service.

23. As such, Plaintiff and consumers were not provided with adequate notice of ISV's Terms of Service and thus are not bound to them.

**B.    ISV's Use of Route**

24. ISV is an online retailer whose "mission is to inspire and equip for a life

CLASS ACTION COMPLAINT

that's better in balance through adventure on the water," offering paddleboarding, kayaking, surfing, and other aquatic activity goods through its website, islesufandsup.com.[1]

25.    ISV's terms of use explicitly acknowledges that as long as a consumer submits an accurate and complete purchase order, ISV is responsible for any delivery errors associated with a consumers' purchase through the website.[2]

26.    This aligns with the general principles of the Uniform Commercial Code ("UCC"), under which the default rule is that a merchant seller cannot transfer risk of loss to the buyer until the buyer has actually received the merchandise. *See* Unif. Commercial Code § 2-509(3).

27.    As a result of this inherent risk, ecommerce retailers are purported to spend in excess of 18% of every dollar gained through online sales towards fulfillment costs like packaging, delivery, and customer support.[3]

28.    Route is an ecommerce service provider that purports to relieve retailers of these costs in two ways: 1) providing "shipping insurance," which shifts the risk of loss to Route, the carrier, rather than remaining with the merchant; and 2) providing customer support for shipment related issues.

29.    Route touts that it provides "instant resolutions and world-class support"

---

[1] https://islesurfandsup.com/pages/about-us
[2] *See* https://islesurfandsup.com/policies/terms-of-service ("FAILED DELIVERY: The Owner cannot be held responsible for delivery errors due to inaccuracies or incompleteness in the execution of the purchase order by the User, nor for any damages or delays after handover to the carrier if the latter is arranged by the User").
[3] See CGE Logistics

CLASS ACTION COMPLAINT

to a retailer's customers, having resolved over one milling shipping related customer support tickets. For a fee as low as $349/month, a retailer can offload its potential liability for lost, stolen or damaged shipments to Route, saving the significant costs it would otherwise have to spend itself on customer support resolutions.

30.     However, the way Route can offer such a low-cost service, and the way the retailer can achieve such great savings, is that Route charges the **consumer** a "Route Package Protection" fee on each transaction.

31.     As a matter of course, the consumer who bears the expense of this fee is not afforded any additional security or "insurance" as to the successful and safe delivery of their purchase; by default, the merchant seller bears the risk of loss until the goods are received by the buyer. Accordingly, the only insuring effect is to the benefit of the seller, who has shifted any of that liability to Route.

32.     Consequently, rather than paying for any benefit that they would otherwise not receive, ISV uses Route to make consumers pay separately for **its own** insurance and customer support needs, all the while benefitting ISV's bottom line to consumers financial detriment.

33.     To make matters worse, ISV uses deceptive, dark pattern practices to trick consumers into unwittingly bearing the costs of this erroneous fee.

**B.     Sneaking in and automatically adding "Route Package Protection" is Misleading and Deceptive**

34.     The FTC defines unlawful dark patterns to include any online "design practices that trick or manipulate users into making decisions they would not otherwise

have made and that may cause harm."[4]

35.    ISV uses manipulative and deceptive user-interface (i.e. "dark patterns") to trick consumers into purchasing Route Package Protection.

36.    First, this Route Package Protection is automatically added to consumers' shopping carts, without their affirmative consent, at the final stage of the purchasing process after consumers have invested ample time and have already decided to make a purchase.

37.    Because the Route Protection Package is surreptitiously added to consumers' shopping carts at the very end of a transaction, many consumers may not realize that they are being charged for this unwanted product or service, leading to unintentional purchases and overpayments by consumers.

38.    Second, instead of obtaining consumers' express and informed consent before adding this charge for an unnecessary product or service, ISV's checkout page presents the "package protection" as a *prechecked* box in small script . This is unlike other companies that require consumers to affirmatively check a box to agree to an additional product or service such as shipping protection or express shipping options.

39.    ISV prechecks the box to dupe consumers into paying for this unnecessary fee, capitalizing on the fact that countless consumers will not notice the additional charge.

---

[4]FTC, Bringing Dark Patterns to Light, at 2 (September 2022), https://www.ftc.gov/reports/bringing-dark-patterns-light.

CLASS ACTION COMPLAINT

40.    Finally, adding to the consumer confusion is that there is no clear way to avoid paying for the fee. Unlike other products that can be easily removed from a shopping cart, the Route Package Protection can only be removed if a consumer unselects the prechecked box, displayed separate and apart from their shopping cart "bag".

41.    ISV fails to adequately disclose to consumers how to avoid paying for the Route Package Protection.

**C.    ISV Omits and Conceals Material Facts About the Costs of Delivery**

42.    The Route Package Protection Fee is not disclosed until the final payment screen, and thereby ISV misrepresents the cost of the products on which the consumer relies in placing an order.

43.    The representation of shipping costs is false because ISV surreptitiously tacks on an additional delivery fee described as the "Route Package Protection" Fee. Moreover, rather than including the costs in the "shipping" section of the checkout page, the Fee is surreptitiously combined into the "subtotal" along with the actual retail items purchased.

44.    By assessing the "Route Package Protection" Fee to all orders placed on ISV's website, the advertised price for any specific item product is false.

45.    By unfairly obscuring its true fees to consumers, ISV deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true fees. Indeed, other major fashion retailers in the U.S. do not assess fees outside of those

properly disclosed at the outset of a consumer's order.

30.     In short, the disclosed item cost on ISV's website is not accurate, due to the Route Package Protection Fee that ISV deceptively adds late in the ordering process.

31.     ISV does not inform consumers of the true costs of its products and delivery service.

32.     Moreover, the Route Package Protection Fee assessed is never reasonably disclosed to consumers until it shows up as a line item in their shopping cart—after the purchase process is largely complete. This process fails to provide an adequate advance warning to customers that additional fees will be imposed on their purchases.

33.     Many consumers do not notice these fees are being added to their order. Others believe that they have no choice but to pay these fees. And others still notice the previously undisclosed fees but decide to go through with the purchase anyway unsure of how it can be removed from their Cart after it was automatically added: they have already invested substantial time and effort inputting their information into the ISV's system. Consumers are disincentivized to start over and research whether there is a way to avoid these fees. The deceptive checkout practice has done its job and diverted the inflated sale to ISV.

34.     In any of these situations, the result is the same: a consumer who otherwise would have found a way to pay without paying the fees, ends up paying the fees. Defendant profits; Plaintiff and the class pay more.

35.    This is a classic case of "Drip pricing". "Drip pricing" works because as research has shown, "our brains tend to fix on the price we first encountered even after we learn the total cost. And even when consumers learn about the hidden fees, they often pay up rather than shop around . . . because they figure that 'investing more time into searching for it will not be worthwhile.'" Santul Narkar, *It's a Great Deal, Before the 'Drip Pricing'*, New York Times, available at https://www.nytimes.com/interactive/2024/02/23/business/what-is-drip-pricing.html (quoting Professor David Friedman of Willamette University).

36.    By unfairly obscuring its charges to consumers, ISV deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true charges.

**D.    The Router Package Protection Fee Is a Junk Fees That Violates Federal Guidance**

37.    ISV's fee is precisely the type of "Junk Fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3.

38.    As the Federal Trade Commission said recently in its effort to combat

Junk Fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Fed. Trade Comm'n, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

39.    In July of 2024, California expanded its Consumer Legal Remedies Act ("CLRA") to expressly make illegal "drip pricing," which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29). Under the new California law, it is illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed July 18, 2024). As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id*. at p. 4 (emphasis added).

40. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising, the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." *See* Fed. Trade Comm'n, *How to Make Effective Disclosures in Digital Advertising* at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

41. Defendant violates federal guidance and California Law by adding the Route Package Protection fee as a line item well after the consumer "add[s] to shopping cart."

**E.    Plaintiff Periera's Experience**

42. Plaintiff Periera used the ISV website to place an order for a paddle board and an electric pump on June 25, 2023.

43. When using the website, Plaintiff was repeatedly informed that her cart total was $525.00.

44. However, unbeknownst to Plaintiff, Plaintiff's purchase included a surreptitious Route Package Protection Fee amounting to $31.63 that—for the reasons described above—in fact represented an additional product and delivery fee tacked on to Plaintiff's order.

45.    Plaintiff would not have made this purchase if she had known that ISV would tack on additional fees.

46.    If she had known the true cost of her orders, she would have chosen another method or merchant for ordering her paddle board and electric pump.

47.    As a result of Defendant's deceptive addition of a Route Package Protection Fee, Plaintiff overpaid for her ISV purchase.

## CLASS ALLEGATIONS

48.    Pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), Plaintiff brings this action on behalf of herself and a Class of similarly situated persons. The Class is defined as follows:

> All consumers in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered products from islesurfandsup.com, and were assessed a so-called Route Package Protection Fee.

49.    Excluded from the Class is Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

50.    **Numerosity**:  At this time, Plaintiff does not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiff

believes that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

51.    **Commonality**:  There are questions of law or fact common to the Class, which include, but are not limited to the following:

a.    Whether during the class period, Defendant deceptively represented its Fees for orders on  islesurfandsup.com;

b.    Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

c.    Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d.    Whether Defendant's advertised prices are false;

e.    Whether Defendant's alleged conduct constitutes violations of the laws asserted;

f.    Whether Defendant acted in bad faith when it charged a Route Package Protection Fee;

g.    Whether Defendant violated California's Unfair Competition Law;

h.    Whether Defendant violated California's False Advertising Law;

i.    Whether Defendant violated California's Consumer Legal Remedies Act;

j.    Whether Plaintiff and members of the Class were harmed by Defendant's misrepresentations;

k.    Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

l.    Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent the amount for orders on islesurfandsup.com.

52.    **Typicality**:  Like Plaintiff, many other consumers ordered products for delivery from ISV's website, believing that the price reflected throughout the check-out process represented the total Plaintiff and other consumer's would pay for their order. Plaintiff's claims are typical of the claims of the Class because Plaintiff and each Class member was injured by Defendant's false representations about the true nature of ISV's products and delivery service. Plaintiff and the Class have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Class emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

53.    **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions.  Plaintiff will fairly and adequately represent the interests of the Class and does not have any interests adverse to those of the Class.

54.    **The Proposed Class Satisfies Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiff remains interested in ordering products for delivery through

ISV's website; there is no way for her to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

55.    Specifically, Defendant should be ordered to disclose the true costs of its products and delivery service.

56.    Defendant's ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

57.    **The Proposed Class Satisfies the Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

58.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-57 as if fully set forth herein.

59.    To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

60.    Plaintiff and the Class conferred a benefit on Defendant when they paid

18

Defendant the "Route Package Protection" Fee, which they did not agree to and could not reasonably avoid.

61.    Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

62.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

63.    Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## SECOND CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law
(Cal. Bus. & Prof. Code § 17200, et seq.)
(On Behalf of Plaintiff and the Class)**

64.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-57 as if fully set forth herein.

65.    Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq.*

66.    The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

67.    The UCL imposes strict liability. Plaintiff need not prove that Defendant

intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

68.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

69.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

70.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

71.     Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting that the presence and nature of its Route Package Protection fee.

72.     Defendant's acts and practices offend an established public policy of truthful advertising and fee disclosure in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

73.     The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct

described herein.

74.    Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*

75.    Defendant's business practices have misled Plaintiff and the proposed Class and, unless enjoined, will continue to mislead them in the future.

76.    Plaintiff relied on Defendant's misrepresentations in making her purchase.

77.    By falsely marketing its products and delivery services, Defendant deceived Plaintiff and Class members into making purchases they otherwise would not make and paying more than they should have.

78.    As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they will be deceived. Plaintiff desires to conduct further business with Defendant but cannot rely on Defendant's representations unless an injunction is issued.

79.    As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

80.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff

and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

81.    Plaintiff has no adequate remedy at law in part because Defendant continues to add its Route Protection Package fees to purchases. Plaintiff therefore seeks an injunction on behalf of the general public to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein.

**THIRD CLAIM FOR RELIEF**
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, et seq.)**
**(On Behalf of Plaintiff and the Class)**

82.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-57 as if fully set forth herein.

83.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

84.    Further, the FAL provides that: "Any advertisement, including any

advertisement over the Internet, soliciting the purchase or lease of a product or service, or any combination thereof, that requires, as a condition of sale, the purchase or lease of a different product or service, or any combination thereof, ***shall conspicuously disclose in the advertisement the price of all those products or services***." Cal. Bus. & Prof. Code §17509(a).

85.    Defendant materially misrepresents the true costs of its products and services by 1) surreptitiously adding the Route Package Protection to consumers carts without their consent; and 2) failing to disclose in its advertisements the true price of all products and services charged.

86.    Defendant knowingly misrepresents the costs of its products in its online advertisements

87.    Defendant's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

88.    Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

89.    Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their deceptive practices.

90.    Further, Plaintiff requests an order awarding Plaintiff and Class members restitution of the money wrongfully acquired by Defendant by means of said

CLASS ACTION COMPLAINT

misrepresentations.

91.    Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

**FOURTH CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of Plaintiff and the Class)**

92.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-57 as if fully set forth herein.

93.    This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.*  Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's products and delivery services offered to consumers in exchange for payment are "transactions" within the meaning of California Civil Code § 1761(e). The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

94.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of ISV products:

        a.    "Representing that goods or services have . . . characteristics . . . that they do not have";

        b.    "Using deceptive representations . . . in connection with . . . services";

c.    "Advertising goods or services with intent not to sell them as advertised"; and

d.    "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges.

95.    Specifically, ISV affirmatively and knowingly misrepresented the price of any given product on its website. ISV failed to inform consumers in any disclosure, at any time, that the so-called "Route Package Protection" Fee would be automatically tacked on to their purchase total at the last possible opportunity.

96.    At no time does Defendant disclose the true nature of its Route Package Protection Fee; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

97.    Defendant's conduct and actions are deceptive, untrue, and misleading to reasonable consumers and will continue to mislead consumers in the future.

98.    Plaintiff relied on Defendant's representations in making her purchase.

99.    As a result of Defendant's deceptive practices, Plaintiff overpaid for her purchase.

100.    As a direct and proximate result of Defendant's misconduct, Plaintiff and the Class members have suffered and will continue to suffer damages.

101.    Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to

respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend her Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant.  As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

102.   Plaintiff also seeks public injunctive relief, as described above.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff and the members of the Class seek an Order:

1.     Certifying the proposed Class;

2.     Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

3.     Declaring the Defendant has committed the violations of law alleged herein;

4.     Providing for any and all injunctive relief the Court deems appropriate;

5.     Awarding statutory damages in the maximum amount for which the law provides;

6.     Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

7.     Providing for any and all equitable monetary relief the Court deems appropriate;

8.     Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

9.     Awarding Plaintiff their reasonable costs and expenses of suit, including attorneys' fees;

10.     Awarding pre- and post-judgment interest to the extent the law allows; and

11.     Providing such further relief as this Court may deem just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: March 24, 2025

By: *<u>/s/ Scott Edelsberg</u>*
Scott Edelsberg (SBN 330990)
**EDELSBERG LAW, P.A.**
1925 Century Park E #1700
Los Angeles, CA 90067
Tel: (305) 975-3320
Email: scott@edelsberglaw.com

CLASS ACTION COMPLAINT